**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:26-cr-00158-AHA** |
| | : | |
| **COLLIN L. WELCH,** | : | **Sentencing: December 3, 2026** |
| | : | |
| **Defendant.** | : | |

# GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The commission of an officer in the United States military asserts to the public the following about the recipient: "Know ye, reposing special trust and confidence in the patriotism, valor, fidelity and abilities of [officer name]." This language extends back to before the founding of our Republic; in 1775 the Continental Congress commissioned George Washington as a General of the Continental Army, and the commission they issued began with the following words, "We reposing especial trust and confidence in your patriotism, conduct and fidelity."[1] Accordingly, for over 250 years, the United States has bestowed on its commissioned officers with the laurel and responsibility of "special and trust and confidence."

Defendant Collin L. Welch (Welch), was a commissioned officer in the U.S. Army National Guard, promoted to the rank of Major, and at every promotion (from Lieutenant to Captain to Major) would have received a commission noting the "special trust and confidence" bestowed upon him. But for a period of at least six years, Welch abused that very same special trust and confidence, living a dishonorable double-life, consisting of fraud on two marriages, thousands of dollars stolen from the U.S. government, and disgrace to his Army rank and uniform. Welch's crimes and deceit, made with full deliberation and planning, have left a vast trail of human

---

[1] National Archives, Founders Online, *Commission From the Continental Congress, 19 June 1775*, https://founders.archives.gov/documents/Washington/03-01-02-0004 (last visited November 21, 2026).

wreckage in his wake. His predatory and manipulative criminal conduct was knowing and coldly deliberate, caused incalculable harm, and absolutely demands a term of imprisonment from this Court.

If the Court agrees with the sentencing guidelines calculations proffered by the Government below, as verified in the Final Presentence Investigation Report ("PSR"), then Welch's sentencing guidelines range is 0 to 6 months. Therefore, to reflect the seriousness of Welch's offenses, his repeated criminal acts over many years, his victimization of those he purported to love as his family and of the D.C. National Guard, and to deter him and others from engaging in similar behavior in the future, the Government recommends that the Court sentence Welch to a within-guidelines term of 4 months of imprisonment, followed by three years of supervised release. The Government also requests that the Court order Welch to pay mandatory restitution in the amount of $54,882 to the D.C. National Guard. Finally, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and because Welch has spent the proceeds of his theft, the Court should impose a $54,882 criminal forfeiture money judgment in favor of the United States. Such a sentence would be sufficient but not greater than necessary to comply with the purposes of sentencing.

## I. Factual and Procedural Background

As described in greater detail in the Information and the Statement of Offense, at all relevant times, Welch was a member of the Army National Guard. Over a period of approximately six years, Welch cultivated an extramarital relationship through complex acts of deception, falsely marrying Individual 2 while he continued to be married to Individual 1, tricking Individual 2 and her daughter to illegally move to and remain in the United States, and

disgracefully funding his criminal scheme by stealing approximately $54,882 from the D.C. National Guard through fraudulent travel claims.

On July 9, 2026, Welch was charged by Information with one count of Unlawfully Inducing Illegal Entry and Residence in the United States, 8 U.S.C. § 1324(a)(1)(A)(iv); and one count of Theft, 18 U.S.C. § 641. ECF No. 2. The Information also contained a forfeiture allegation. *Id*. at 2-3.

On July 28, 2026, Welch pleaded guilty to both Counts of the Information. His sentencing hearing is scheduled for December 3, 2026.

## II. U.S. Sentencing Guidelines

For the reasons stated herein, the Government submits that the appropriate guidelines calculations are as follows:

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(1) | Base Offense Level | 6 |
| U.S.S.G. § 2B1.1(b)(1)(C) | Loss Amount +$20,000 | +4 |
| U.S.S.G. § 3B1.3 | Abuse of Trust | +2 |
| U.S.S.G. § 3E1.1 | Acceptance of Responsibility | -2 |
| | **Total** | **10** |

In the Plea Agreement, the parties agreed with the foregoing guidelines calculations for base offense level, loss amount[2], and acceptance of responsibility. The parties agreed that Welch had the burden of proving that the zero-point offender reduction under U.S.S.G. § 4C1.1 should apply. ECF No. 7 at 3.

[2] The Statement of Offense accompanying the plea agreement indicated a loss amount of $54,882, which warranted a 6-level increase under § 2B1.1(b)(1)(D) of the guidelines as of that date. The loss amount guidelines were updated as of November 1, 2026, such that a loss of $54,882 is now a 4-level increase under § 2B1.1(b)(1)(C).

The PSR submitted by the U.S. Probation Office concurs with the above guidelines calculations, and determined that the zero-point offender reduction should apply. ECF No. 16 at ¶¶ 56-64.

The PSR writer also concluded (and the Government agrees) that Welch has a criminal history score of zero putting him in Criminal History Category I. *Id.* at ¶ 67. At Criminal History Category I and total offense level of 8 (as calculated by the Government and adopted by the PSR writer), the recommended guideline imprisonment range is 0 to 6 months, with a fine range of $2,500 to $25,000.

As the parties noted in the Plea Agreement, Unlawfully Inducing Illegal Entry and Residence in the United States carries a maximum sentence of 5 years, and theft carries a maximum sentence of 10 years; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b)(3), (d); a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2); mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. ECF No. 7 at 1.

**III. The 18 U.S.C. § 3553(a) Factors Support a Sentence of Incarceration**

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to

provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

The facts underlying Welch's crimes are astounding. After years of living a deceitful double-life by concealing his relationship with Individual 2 from his wife (Individual 1) and by tricking Individual 2 into believing that he was divorced from Individual 1, Welch manipulated Individual 2 into unlawfully moving to the United States with her minor daughter and putatively marrying him in Virginia. Welch maintained his deception by repeatedly creating forged government documents (often using his D.C. National Guard computer) which purported that Individual 2 and her daughter were official military dependents and had become lawful permanent residents of the United States. Welch initially kept Individual 2 and her daughter in a hotel room, and then ultimately leased an apartment. Welch funded his deception through misuse of his government travel card, by receiving authorization for fictitious trips and generating fake receipts for reimbursement.

Welch was in a position to commit these crimes precisely because of the special trust and confidence placed in him as a Major in the National Guard. The D.C. National Guard trusted him when he indicated official travel was required, trusted him when he submitted forged receipts, and trusted him when he said that Individual 2 was a scammer to be disregarded. Individual 2 trusted Welch when he said that he was divorced, trusted him when he married her in Mongolia, and trusted him to leave behind her life and security in Mongolia and move to the United States with her 11-year old daughter. As she noted in her statement, "I had no reason to doubt him; he presented himself as a U.S. Army officer and a diplomat representing the United States, and I trusted the word of someone in that position." Individual 1 trusted Welch as her husband and the

father of their children, and trusted him to support the family as an Army officer.

The result of this trust given to Welch is a long trail of human wreckage. Apart from the betrayal of the D.C. National Guard and his oath as a commissioned officer, and apart from the devastation and breakup of his own family and nearly 20 years of marriage to Individual 1, Welch's crimes have annihilated the lives of Individual 2 and her daughter. As Individual 2 stated in her letter: "As a result of these events, my daughter and I have experienced homelessness and prolonged financial hardship, often without money for basic needs. We continue to receive calls from debt collectors regarding an apartment rental and a medical visit that Mr. Welch never paid for, despite promising to do so. We have been unable to travel, and I have lived in ongoing fear because of our immigration status. I was unable to travel to attend my nephew's funeral, and I remain unable to travel to Mongolia to see my mother, who is ill." Moreover, Individual 2's daughter has suffered profound medical consequences during the time of the upheaval caused by Welch, lacking adequate medical care for neurological conditions which impact her hearing and ability to walk.

In every sense of the word, Welch used Individual 2, keeping her in a subordinate and vulnerable position while in the United States, with no option but to live under his controlled conditions. And when Welch's carefully constructed house of cards built on fraud and lies began to crumble, he first attempted to dismiss Individual 2 as a "scammer," before washing his hands of responsibility.

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

A guidelines sentence of incarceration for Welch's planned, deliberate, years-long fraud and theft scheme is appropriate to promote respect for the law and to deter other would-be fraudsters. Theft of nearly $55,000 in any other context would without question be a serious crime for which society would expect imprisonment. The fact that Welch's crime was facilitated by his position of trust, and was through fraud, should be aggravating, not mitigating. To wit: if someone were to walk into a jewelry store and steal a $55,000 diamond necklace, society would expect punishment. And here, where the theft was not committed out of any socioeconomic disadvantage or economic necessity, but was instead a calculated part of a manipulation scheme, the consequences must be greater.

More importantly, a sentence of imprisonment is critical to respect the human lives impacted by Welch. Individual 2 and her daughter have experienced homelessness, and face an uncertain future. Their lives should not be recast as merely some sort of learning experience for Welch on his journey of personal growth. They are not side characters to Welch's story; they are human beings entitled to fundamental dignity and respect, and they were put in a vulnerable position by Welch, and taken advantage of.

Respect for the law demands that the sentence in this case demonstrate that those privileged to be in positions of trust and authority who abuse that status will be held accountable by the law, in a manner that is unambiguous and unavoidable. Imprisonment will provide justice for Welch's crimes, and will also indicate to society that fraud and manipulation are unacceptable. A sentence of probation will be insufficient to reflect the seriousness of the offense, or to respect those who were impacted by the crimes. A sentence of probation would instead allow Welch to put Individual 2 and her daughter out of his mind, and continue on his current path with no requirement

for change, and no opportunity for redemption. Justice demands imprisonment.

### C. The History and Circumstances of the Defendant

Welch has had a long and generally successful career as a National Guard officer. His service included overseas deployments, but did not require him to engage in active combat. As Welch does not have a Purple Heart or Army Combat Action Badge, any injuries or trauma he has sustained have not been combat-related. Trauma need not be combat related to have a direct impact on mental health and require treatment. But there are many Army officers with the same background and experiences as Welch, and they have continued to serve honorably without committing theft and fraud. Welch's military service is not an excuse for his crimes. His decisions were not impulsive or in a heat of passion; they were made from a position of privilege, and the result of deliberate planning and sophisticated forgery of documents and receipts.

### D. The Need to Avoid Unwarranted Sentencing Disparities

Concerning unwarranted sentencing disparities, a sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013). Here there are no comparator cases to give rise to any sentencing disparity. Accordingly, the requested 4-month period of imprisonment is appropriate, as it is within the calculated guidelines range.

### E. Restitution and Forfeiture

Count 2 is an offense against property under Title 18, and thus falls under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. As a result, the Court must order that "the defendant

make restitution to the victim of the offense[s]." 18 U.S.C. § 3663A(a)(1). Specifically, the Government requests Defendant be ordered to pay restitution in the amount of $54,882 to the D.C. National Guard. *See* 18 U.S.C. § 3663A (requiring courts to order restitution in the full amount of victim's loss).

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) the Government also requests the Court impose a forfeiture money judgment in the amount of $54,882, which represents the proceeds Welch received as part of his theft. A proposed final order of forfeiture is attached to this memorandum as Exhibit D.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should sentence Welch to a term of 4 months of imprisonment, followed by three years of supervised release, order restitution in the amount of $54,882, and enter an order of forfeiture of a criminal money judgment in the amount of $54,882. This guidelines sentence is appropriate given all the § 3553(a) factors here. Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney
for the District of Columbia

By: *<u>/s/S. Babu Kaza</u>*
S. BABU KAZA (D.C. Bar No. 1033670)
Assistant United States Attorney
United States Attorney's Office
District of Columbia
601 D Street NW
Washington, DC 20530

(202) 803-1652
Sridhar.Babu.Kaza@usdoj.gov